HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CORNHUSKER CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CHRIS KACHMAN and DEBBIE KACHMAN, husband and wife, ROCKERIES INC., a Washington corporation, LESTER MADDEN and JANE DOE MADDEN, husband and wife, and the marital community comprised thereof, BROOKS SAMPLES, individually and as Personal Representative of the Estate of Leanne Samples,<br><br>Defendants. | Civil No. 3:05-cv-05026-RBL<br>CONSOLIDATED WITH<br>Civil No. 2:09-cv-00273-RBL<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO SET AMOUNT OF ATTORNEY FEE AWARD |

THIS MATTER is before the Court on Plaintiff's Motion to Set Amount of Attorney Fees. [Dkt. #104]. For the following reasons, Plaintiff's Motion is GRANTED. Defendant is awarded *Olympic Steamship* attorney fees in an amount of $379,416.99 for the coverage phase of the litigation.

*Discussion*

**A. Background**

This Declaratory Judgment action concerns an insurance coverage dispute between Plaintiff Cornhusker Casualty Insurance Company ("Cornhusker") and its insured, Defendant Rockeries, Inc. ("Rockeries"). When it was filed, the case involved a variation of the so-called "mailbox rule." Specifically at issues was whether certified mail satisfies the notice requirement for cancellation of an insurance policy under the RCW §48.18.290

Cornhusker sent a letter to Rockeries cancelling a commercial lines policy for non-payment of

ORDER
Page - 1

1 premium. The letter was sent via certified mail and was never actually received by Rockeries.Rockeries
2 did not pay the premium prior to the cancellation date and the policy was cancelled. Three days later, a
3 tragic accident occurred, allegedly caused by the negligence of Rockeries . Samples (the injured party
4 and a Defendant in the Declaratory Judgment Action) filed suit against Rockeries. Cornhusker denied
5 coverage and commenced this declaratory judgment action to determine its obligations.

6 Rockeries and Samples seteld the underlying personal injury lawsuit. Rockeries agreed to a
7 stipulated judgment and assigned to Samples all of its rights against Cornhusker. In exchange, Samples
8 agreed not to execute on that judgment. A reasonableness hearing was held on the settlement agreement
9 in Pierce County Superior Court. The Honorable Linda Lee ruled that the agreed judgment amount ($2.3
10 million) was reasonable. [Dkt. #104 Ex. #3]

11 In this Declaratory Judgment action, Cornhusker sought a determination that the policy was
12 effectively cancelled prior to the accident, and that Rockeries' losses were not covered. The Court granted
13 Cornhusker's Motion for Summary Judgment, concluding that the cancellation notice was effective and
14 that the insurance policy was cancelled before the accident. [Dkt. #70].

15 Samples appealed the Court's decision to the Ninth Circuit. The Ninth Circuit then certified the
16 following question to the Washington State Supreme Court:

> Does sending notice of cancellation by certified mail satisfy the "mailed" requirement of RCW § 48.18.290 (1997) and give sufficient notice of cancellation to comply with RCW § 48.18.290, even if there is no proof that the cancellation letter was received by the insured?[1] *Certification from U.S. Court of Appeals for Ninth Circuit v. Kachman*, 165 Wn.2d 404, 413 (2008).

The Washington State Supreme Court held that sending notice of cancellation by certified mail did not satisfy the "mailed" requirement of RCW § 48.18.290 unless it was "actually delivered." *Id*. In this Court's view, the traditional "mailbox rule" was designed to protect the party sending mail, rather than the recipient. The Washington Supreme Court held that, at least in the insurance cancellation context, the mailbox rule protected the recipient insetead.

---

[1] Under RCW § 48.18.290, if "an insurer cancels a policy [. . .] for nonpayment of premium, the insurer must deliver or mail [written notice of cancellation] to the named insured."

ORDER
Page - 2

Based on the response to the Certified Question, the Ninth Circuit held that Cornhusker had not provided an effective cancellation notice because the cancellation letter was not "actually delivered" to Rockeries. It reversed this Court's summary judgment, and remanded with directions to enter summary judgment in Samples' favor instead. *Cornhusker Casualty Ins. v. Samples,* D.C. No. CV-05-05026-RBL (9th Cir. 2009). [Dkt. #104 Ex. #5 at 37].

Cornhusker now asks the Court to set the amount of *Olympic Steamship* attorneys' fees Samples is entitled to recover as the prevailing insured in the coverage litigation. [Dkt. #104 at 1-2]. Samples requests *Olympic Steamship* fees totaling $674,225.74. [Dkt. #105 at 12] Cornhusker advocates a fee of $201,297.00. [Dkt. #104 at 11].

**B. *Olympic Steamship* Fees: Method of Calculation**

In *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37 (1991), the Washington Supreme Court held that an insured should be awarded attorneys fees "in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." *Id.* at 54.[2]

The amount of *Olympic Steamship* fees is determined using a two-step process. The first step is to calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation at issue and multiplying it by the hourly rate the Court deems reasonable.[3] *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581 (1983); *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). Counsel's

---

[2] An insurer's denial of coverage does not need to rise to the level of bad faith to enable the insured to recoup *Olympic Steamship* fees. All that is required is "that the insurer cause an insured to suffer the costs of litigation in order to compel an insurer to honor its commitment to provide coverage." (citations omitted) *Leingang v. Pierce County Medical Bureau, Inc.*, 131 Wn.2d 133, 149 (1997).

[3] Factors used to determine reasonable fees, sometimes referred to as "*Kerr*" factors, are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). These factors are generally in accord with Washington Rule of Professional Conduct 1.5 and the Model Rule of Professional Conduct 1.5 (2009) regarding reasonable attorney fees.

reasonably expended hours should include those hours counsel spends resolving the question of coverage. *Bowers*, 100 Wn.2d at 597. The second step is to determine whether to adjust the lodestar figure up or down to reflect factors which have not already been subsumed by the lodestar calculation. *Id*.

A trial court may adjust the lodestar figure to reflect the contingent nature of success or the quality of work performed. However, a multiplier for quality is seldom appropriate because quality of representation is usually already reflected in the lawyer's hourly rate. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 335-336 (1993). The rationale for adjustment based on contingency is to compensate attorneys for the risk they bear in the event the litigation is unsuccessful and the attorneys obtain no fee for their time and effort. *Olivine Corp. v. United Capitol Ins. Co.*, 105 Wash.App. 194, 202-03 (2001), *rev'd in part on other grounds,* 147 Wn.2d 148 (2002) (citing *Bowers*, 100 Wn.2d at 598-99). To account for this risk, the Court should evaluate the likelihood of success at the outset of the litigation and apply the factor only to time expended before assurance of recovery. *Id.*

## C. Reasonable Number of Hours

Samples seeks *Olympic Steamship* fees for attorney hours worked on the coverage phase of the litigation, including time devoted to the settlement agreement and reasonableness hearing. Cornhusker argues that *Olympic Steamship* fees are not available for the settlement agreement or reasonableness hearing[4] because neither was necessary to resolution of the coverage question. [Dkt #111 at 2,7]. Samples counters that Cornhusker's denial of coverage necessitated the settlement agreement and reasonableness hearing to protect the insured's interests under the policy. [Dkt. #105 at 8].

*Olympic Steamship* fees are recoverable in cases where the insurer forces the insured to litigate

---

[4] Cornhusker argues that a reasonableness hearing is not required for an insured to assign its rights against its insurer to pursue a coverage action. (Citing *Howard v. Royal Specialty Underwriting, Inc*. 121 Wash.App. 372, 379 (2004)). Here, it argues that the reasonableness hearing "had nothing to do with Samples, through assignment, obtaining the benefit of *coverage* under the Cornhusker policy" (emphasis added) [Dkt. #104 at 9] because the hearing only pertained to the presumptive damage claim in a later bad faith action. [Dkt. #111 at 7]

ORDER
Page - 4

questions of coverage. *Weyerhaeuser Co. v. Fireman's Fund Ins. Co.*, 2008 WL 2035610 at *5 (W.D.Wash. 2008) (citing *Leingang v. Pierce County Med. Bureau*, 131 Wn.2d 133, 147 (1997)). It is generally the case that "when an insured must bring suit against its own insurer to obtain a legal determination interpreting the meaning or application of an insurance policy, it is a coverage dispute." *Colorado Structures*, 161 Wn.2d at 606. However, disputes that are only over the value of the claim are not subject to *Olympic Steamship* rules. *Leingang v. Pierce County Med. Bureau*, 131 Wn.2d 133, 144 (1997) (citing *Datyon v. Farmers Ins. Group*, 124 Wn.2d 277, 280 (1994)). For example, "*Olympic Steamship* applies when an insurer or similar obligor contests the meaning of a contract, but not when it contests other questions as, for example, its liability in tort or the amount of damages it should pay." *Colorado Structures, Inc. v. Insurance Co. of the West*, 161 Wn.2d 577, 167 (2007) (quoting *Colorado Structures, Inc. v. Insurance Co. of the West*, 125 Wash.App. 907, 928 (2005)).

Cornhusker argues persuasively that the settlement agreement and reasonableness hearing were not necessary to the coverage question because they involved issues of damages. However, both the agreement and hearing addressed issues of coverage as well. The settlement agreement and reasonableness hearing sought to obtain the benefit of the policy's $1 million coverage limit, as well as additional monetary damages amounting to roughly $1.3 million ($2.3 million in total compensation less the $1 million maximum covered under the policy). The Court will not divide the settlement agreement and reasonableness hearing up based on the amount of time spent on damage and coverage issues in this context. Because both involved the Defendant's efforts to secure coverage initially denied by Cornhusker under the policy, *Olympic Steamship* fees shall be awarded for all attorney hours devoted to these portions of the litigation.[5]

---

[5] Cornhusker contends that while Rockeries was free to assign its rights to Samples under Washington common law for the purpose of pursuing a coverage action, time spent on the stipulated judgment and covenant not to execute was not necessary to the resolution of the coverage question and thus should not be recoverable under *Olympic Steamship*. [Dkt. #111 at 2]. While not necessary to resolution of the coverage question, the method used to assign Rockeries' rights to Samples is the standard method used in such situations. When an insurer refuses to indemnify the insured against the claims of a third party plaintiff, it is common practice for the insured and the plaintiff to enter into a settlement agreement assigning to the

ORDER
Page - 5

This conclusion is consistent with the Court's decision in *MacLean Townhomes v. Charter Oak Fire Ins. Co.* that *Olympic Steamship* fees shall be granted for attorney hours spent on a reasonableness hearing if that hearing is "a necessary part of [the] action and establishe[s] the presumptive measure of damages for the coverage trial." *MacLean Townhomes, LLC v. Charter Oak Fire Ins. Co.*, Slip Copy, 2009 WL 734693, *3-4 (W.D.Wash. 2009). In establishing $2.3 million as the reasonable measure of liability to Samples, the reasonableness hearing also established the presumptive measure of damages for the coverage trial–$1 million, the maximum covered under the policy. Samples is entitled to *Olympic Steamship* fees since the reasonableness hearing established damages for the coverage trial.

In sum, the billable hours requested by Samples' attorneys are reasonable and will be used in calculating the lodestar fee: 208.9 total hours for Paul Stritmatter, 209.7 total hours for Kevin Coluccio, 304.3 total hours for Ray Kahler, and 24.2 total hours for Brad Moore.[6]

**D. Reasonable Hourly Rates**

Samples' Counsel argues that the following hourly rates for its attorneys are reasonable: $500 per hour for Paul Stritmatter, $450 per hour for Kevin Coluccio, $400 per hour for Ray Kahler, and $425 per hour for Brad Moore. Samples also seeks an hourly multiplier of 2.0, based on the contingent nature of the representation. [Dkt. #104 Ex. #8]. Cornhusker argues that an hourly rate of $365 is reasonable and that no multiplier should be allowed because the hourly rates already account for the contingent nature of the work. Cornhusker argues that even if the Court finds a multiplier to be appropriate, it should not exceed 1.5. [Dkt. #111 at 1].

---

plaintiff the insured's rights against the insurer, in exchange for a covenant not to execute further against the insured. The agreement stipulates a settlement amount which the assignee may then seek from the insurer in litigation subject to a reasonableness hearing. See e.g. *Red Oaks Condominium Owners Assoc. v. Mutual of Enumclaw Ins. Co.*, 128 Wash.App. 317, 322 (2005); *Chaussee v. Maryland Casualty Co.*, 60 Wash.App. 504 (1991). Because this process is a standard means of asserting the benefit of coverage, and because no evidence has been presented that *Olympic Steamship* fees for such work are barred, Samples is entitled to fees for this portion of the litigation.

[6] Cornhusker only contests the fee hours that Defendant's counsel allegedly devoted to the reasonableness hearing and settlement agreement. Having not adequately specified other grounds on which certain attorney hours should be precluded, the Court will award the Samples compensation for all fee hours asserted.

ORDER
Page - 6

When determining hourly rates, the Court looks at the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). The rates of comparable attorneys in the forum district are typically used. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Samples' Counsel provides the hourly rates of partners in several large Seattle law firms as evidence of the usual and customary rate for their legal services. [Dkt. #107 Ex. #2]. Cornhusker proffers hourly rates of various of its counsel including $365 per hour charged by William Leedom. [Dkt. #111 at 1] Yet, both sides fail to provide any evidence of the prevailing and customary rate in the region for attorneys practicing plaintiff-side, contingency-based tort litigation.[7]

Based on consideration of all the *Kerr* Factors including the prevailing market rates of the (somewhat uncomparable) attorneys in the area as well as the contingency-based nature of the work, the Court awards Samples' counsel reasonable fees in the amount of $450 per hour for Paul Stritmatter, $400 per hour for Kevin Coluccio, $350 per hour for Ray Kahler, and $375 per hour for Brad Moore.

### E. Multiplier

Samples Counsel seeks a 2.0 multiple of the lodestar amount, arguing that such an increase is warranted where the work is of a contingent nature and is inherently risky. Cornhuker argues that a multiplier is not warranted, particularly where the attorneys' hourly rates already reflect a premium due to the nature of the work. They also stress that even if a multiplier is used, a 2.0 (100%) increase on the lodestar amount is not warranted. The Court may adjust the lodestar figure in a contingency case to account for the risk that the attorney's time and effort may go uncompensated. The Court agrees that a 2.0 multiplier is not warranted, but that some relatively modest increase should be awarded. The Court will therefore use a multiplier of 1.25 in calculating the amount of *Olympic Steamship* fees.

---

[7] Paul Stritmatter, attorney for Samples, claims that his own rate of $500 an hour is evidence of the prevailing customary rate in the region for plaintiff's contingent fee litigation. [Dkt. #109 at 9]. This claim has no merit. Comparing the hourly rate of an attorney that is currently involved in the litigation might charge in a similar situation is hardly evidence of the prevailing customary rate for such services. Furthermore, no evidence is offered that such a rate has been charged by the attorney in the past.

ORDER
Page - 7

**F. Determination of Fees**

In Washington State, an insurer that unsuccessfully engages an insured in litigation to deny coverage is deemed to have acted in contravention to the enhanced fiduciary obligations owed to the insured. *McGreevy v. Oregon Mutual Insurance Co.*, 128 Wn.2d 26, 36 (1995). In such cases, the insured's justifiable expectation of insurance protection is frustrated and *Olympic Steamship* fees are awarded in order that the insured be made "whole" and receive the full benefit of its bargain. *Id.* at 39-40.

Cornhusker shall cover all costs of litigation incurred by Samples to compel Cornhusker to honor its commitment to provide coverage. This includes the costs of litigation both for the settlement agreement and reasonableness hearing.

Based on the Court's hourly fee calculations, Samples' counsel is awarded *Olympic Steamship* fees in the amount of $293,465, adjusted by 1.25 multiplier. The Court also awards Samples $12,585.74 for Julia Follansbee's "consulting" fees–an amount which is not disputed by Cornhusker. [Dkt. #111 at 1]. The total amount in *Olympic Steamship* Fees awarded to Samples is $379,416.99.

|  | **Rate (Per Hour)** | **Hours** | **Total** |
|---|---|---|---|
| Paul Stritmatter | $450 | 208.9 | $94,005 |
| Kevin Coluccio | $400 | 209.7 | $83,880 |
| Ray Kahler | $350 | 304.3 | $106,505 |
| Brad Moore | $375 | 24.2 | $9,075 |
|  |  | **Lodestar Amount** | $293,465 |
|  |  | **Multiplier** | x 1.25 |
|  |  | **Subtotal** | $366,831.25 |
| Julia Follansbee (consultant fees) | $390 | 31.9 | $12,585.74 |
|  |  | **Total Fee Award** | $379,416.99 |

*III. Conclusion*

Plaintiff's Motion to Set Attorney's Fees [Dkt. #104] is GRANTED.  Samples is awarded $379,416.99 in *Olympic Steamship* fees.

IT IS SO ORDERED this 1st day of September, 2009.

　　　　　　　　　　　　　　　　　　　／s／ Ronald B. Leighton
　　　　　　　　　　　　　　　　　　　RONALD B. LEIGHTON
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE